UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ROSEMARY BURTON                                                    PLAINTIFF

v.                                         CIVIL ACTION NO. 3:14-CV-00708-CRS-CHL

BOB EVANS FARMS, LLC                                      DEFENDANT

**MEMORANDUM OPINION**

I.     Introduction

On October 1, 2014, Plaintiff Rosemary Burton filed this action against Defendant Bob Evans Farms, LLC ("Bob Evans"). Pl.'s Compl., ECF No. 1-2. She alleges that on February 3, 2014 she slipped and fell on a walkway that appeared to be cleared of snow and ice while walking from Bob Evans to her automobile. *Id.* ¶ 4; Pl.'s Amend. Compl. ¶ 4, ECF No. 48. Plaintiff alleges that Bob Evans either (1) "negligently failed to maintain a safe walkway, thereby creating a danger to its patrons . . . which Defendant should have foreseen, and failed to warn and protect its patrons . . . from the dangerous condition," or (2) "negligently created the dangerous condition by shoveling and removing the snow from the walkway, thereby creating the appearance that it was safe, but failed to put down salt to prevent it from forming black ice." Pl.'s Compl. ¶¶ 5–6, ECF No. 1-2.

On May 28, 2015, Bob Evans filed its Third Party Complaint against Merit Service Solutions, LLC and Merit Service Solutions Holdings, LLC (collectively, "Merit"). Bob Evans' Third Party Compl., ECF No. 19. Bob Evans alleges that Merit was responsible for snow plowing and snow removal services on its property at the time of Plaintiff's injury. *Id.* ¶ 8. Bob

1

Evans seeks common law and contractual indemnification, as well as apportionment from Merit in the event that Plaintiff is entitled to damages against Bob Evans. *Id.* at 4–5.

On September 14, 2015, Merit filed its Third Party Complaint against ATG – All Temp Grounds Maintenance, LLC ("ATG"). Merit's Third Party Compl., ECF No. 35. Merit alleges that it engaged ATG as an independent contractor to remove snow and ice from Bob Evans' property on February 2, 2014. *Id.* ¶¶ 11–12. Merit seeks common law and contractual indemnification, as well as apportionment in the event that Bob Evans is entitled to damages against Merit. *Id.* at 3–5.

ATG now moves for summary judgment as to all claims asserted against it under Federal Rule of Civil Procedure 56. ATG's Mot. Summ. J. 13, ECF No. 63. Bob Evans filed a memorandum in opposition to the motion, ECF No. 64, and ATG filed a reply, ECF No. 65. Merit did not respond to the motion.

For the reasons below, the Court will grant summary judgment in part and will deny summary judgment in part as to the contractual and common law indemnification claims and will grant summary judgment in full as to the apportionment claim.

II. Summary Judgment Standard

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* The Court must draw all factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

III. Undisputed Facts

Plaintiff and her husband, Harvey Burton, had breakfast at Bob Evans on a cold morning. R. Burton's Depo. 28, ECF No. 63-2. In his deposition, Plaintiff's husband testified that in the 24 hours before their breakfast, it was "very cold and snowy" and estimated that it had snowed five inches in that time. H. Burton's Depo. 5, ECF No. 63-3. It was no longer snowing at 9:00 am when they arrived at Bob Evans. R. Burton's Depo. 28, ECF No. 63-2. Upon Burton's arrival at the restaurant, the parking lot had been plowed and the sidewalk leading up to the restaurant had been apparently cleared of snow and ice. *Id.* at 28, 30. There was no salt on the sidewalk at that point. *Id.* at 35. Plaintiff had no trouble walking into the Bob Evans. *Id.* at 30.

After breakfast, Plaintiff and her husband began to walk back to their car from the restaurant. *Id.* at 31. Plaintiff observed that the sidewalk was wet and "glistening." *Id.* at 32. Plaintiff believes that the sidewalk glazed over with ice while they were inside the restaurant. *Id.* at 40. She did not, however, observe any snow or ice melt on the sidewalk when they exited Bob Evans. *Id.* at 42. Plaintiff still did not notice any salt on the sidewalk. *Id.* at 35. On their walk back to the car, Plaintiff's husband told her to be careful because "there was a little bit of snow … up on the sidewalk. It looked like it had fell over on the sidewalk." H. Burton's Depo. 7, ECF No. 63-3.

While on the sidewalk in front of the restaurant, Plaintiff slipped and fell onto the concrete. R. Burton's Depo. 31–33, ECF No. 63-2. After Plaintiff fell, Plaintiff's husband noticed that the sidewalk looked different from when they arrived because it was "sheen-y." H. Burton's Depo. 7, ECF No. 63-3. When he knelt down to try to help her, he found that the area around her was covered in wet ice. *Id.* at 9. After being helped inside by her husband and the Bob Evans manager, Plaintiff and her husband both observed a man exiting the restaurant and

3

applying salt to the sidewalk. R. Burton's Depo. 34–35, ECF No. 63-2; H. Burton's Depo. 10, ECF No. 63-3. According to the Plaintiff's husband, the man looked like a Bob Evans employee because he came out of the kitchen and wore an apron. H. Burton's Depo. 10, ECF No. 63-3.

The Services Agreement between Bob Evans and Merit describes the scope of work and services to be provided by Merit as follows:

> **Snow Plowing:** Snow plowing/removal from designated travel ways and all parking areas shall commence without notification when there is a minimum of 2" inches of accumulated snowfall.
> . . .
> **Snow Placement:** Snow shall be placed in areas, such as lawns, that will prevent melt water from draining back onto cleared surfaces. Snow must not be pushed onto shrubs.
> . . .
> **Ice Control:** Will only occur upon Bob Evans Farms, LLC request, please see Bob Evans Farms, LLC Call Center Authorization form. Contractor should notify locations of any freezing precipitation causing hazardous conditions to pedestrians in designated travel ways and all parking areas. Contractor is expressly prohibited from applying any rock salt or rock salt mixture to any concrete surface or landscape area.
> . . .
> **Sidewalk Shoveling:** Sidewalks that are around the building are only to be shoveled, by either a hand shovel or snow blowing only, between 3:00 am and 5:00 am so as to eliminate hazardous conditions by 6:00 a.m. (This may vary by restaurant open time.) Sidewalks are only to be shoveled if the parking lot is plowed.

Services Agreement 11–12, ECF No. 64-4.

Merit contracted their duties at this Bob Evans location to ATG. Master Service Agreement 10, ECF No. 35-1. The agreement between Merit and ATG provides that Merit is in the business of, among other things, snow clearing and de-icing, and that Merit performs these services by brokering the work to independent contractors. *Id.* at 1. ATG agreed to "be engaged by [Merit] as an independent contractor and agree[d] to provide services for [Merit's] contracts." *Id.* This agreement also provides that "[a]t no time shall [ATG] or its employees engage in direct communication with any client of [Merit]. All communication will be through **Merit Service**

**Solutions**." *Id.* at 4. For the particular Bob Evans location at issue, the agreement contemplates pricing for services, including plowing the parking lot, shoveling sidewalks, salting the parking lot, and loading or hauling snow. *Id.* at 10.

Attached to Merit's Third Party Complaint is a copy of the work completed by ATG regarding the February 2, 2014 snowfall of 4.8 inches. Service Confirmation Sheet, ECF No. 35-2. The services ATG completed that particular day are listed as plowing and salting the parking lot and shoveling the sidewalks. *See id.*

Bob Evans states in its interrogatory answers that its policy for removing ice from the area where Plaintiff fell begins with snow removal before 5 am by a snow removal company when there is a snowfall event of more than two inches. Bob Evans' Answers to Interrogatories 8–9, ECF No. 63-1. Following that process, the manager inspects the sidewalk areas and applies salt as needed when opening the store. *Id.* at 9. Bob Evans states that on the date and time preceding the accident, "[t]he area where plaintiff fell was cleared of snow . . . through Merit Service Solutions. . . . Between 5:00 am and 6:00 am Chris Welch used a shovel to ensure the ramp was clear of snow. He then applied salt on the ramp and sidewalk areas." *Id.* at 7–8. Bob Evans identifies Chris Welch as the assistant general manager at the restaurant and the manager on duty who responded to Plaintiff. *Id.* at 3, 7.

Both the Services Agreement between Bob Evans and Merit and the Master Service Agreement between Merit and ATG contain indemnification clauses. The indemnification clause in the Master Service Agreement, which refers to ATG at "Contractor," provides:

> **26. INDEMNIFICATION: To the fullest extent permitted by applicable law, the Contractor shall indemnify, defend and hold harmless Merit Service Solutions and Merit's client(s) for the locations identified in the Schedule B to this Agreement** . . . from and against all liabilities . . . arising out of, based upon, occasioned by or in connection with:

5

>  (1) Contractor's performance of, or failure to perform, the duties and services under this Agreement;
>
>  (2) A violation of any law, negligence, omission, gross negligence, or willful misconduct by Contractor . . . in performance of the duties and services under this Agreement, or any action of Contractor while performing services on the property of Merit Service Solutions customer(s);
>
>  (3) Damage to property and/or injury, including without limitation death, to all persons, arising out of, based upon, occasioned by or in connection with any occurrence allegedly caused by any act or omission of Contractor related to the performance of duties and services under this Agreement.
>  . . .
>  Pursuant to the indemnification obligation specified above, you agree to indemnify and hold harmless the Indemnified Parties regardless of whether the liability . . . was caused in whole or in part by a violation of any law or any negligence (excluding gross negligence or willful misconduct) of the Indemnified Parties.

Master Service Agreement 7, ECF No. 35-1.

IV. <u>Analysis</u>

ATG asserts that the record is "devoid of evidence that ATG breached any duty that may have been owed to any party in this case or that any such breach was a direct and proximate cause of Plaintiffs' damages." ATG's Mot. Summ. J. 2, ECF No. 63. This assertion addresses the underlying claims by Plaintiff, who alleges that Bob Evans either (1) "negligently failed to maintain a safe walkway, thereby creating a danger to its patrons . . . which Defendant should have foreseen, and failed to warn and protect its patrons . . . from the dangerous condition," ("Plaintiff's first cause of action") or (2) "negligently created the dangerous condition by shoveling and removing the snow from the walkway, thereby creating the appearance that it was safe, but failed to put down salt to prevent it from forming black ice" ("Plaintiff's alternative cause of action"). Pl.'s Compl. ¶¶ 5–6, ECF No. 1-2. The claims Merit brought against ATG are for contractual indemnification (Count I), common law indemnification (Count II), and apportionment (Count III). Merit's Third Party Compl. 3–5, ECF No. 35.

6

A. Count I – Contractual Indemnification

ATG argues that in the indemnification clause of the Master Service Agreement, "ATG agreed to indemnify and hold harmless Merit from all liabilities to the extent of its contractual obligations and services it agreed to undertake." ATG's Mot. Summ. J. 9, ECF No. 63. Thus, because the Services Agreement between Bob Evans and Merit specifically prohibited Merit from using salt on the sidewalks, ATG cannot be found to have had a duty to apply salt to the sidewalks. *Id.* at 9.

As to Plaintiff's alternative cause of action, ATG is correct. ATG cannot be found to have breached a duty to apply salt when it was expressly prohibited in the contract from doing so. Services Agreement 12, ECF No. 64-4. Bob Evans' interrogatory answers show that Bob Evans retained that duty when it provided its policy of having the opening manager apply salt to the sidewalks as needed in the mornings after the snow removal company cleared the sidewalks of snow. Bob Evans' Answers to Interrogatories 8–9, ECF No. 63-1. Thus, ATG is entitled to summary judgment on Count One as to Plaintiff's alternative cause of action.

Bob Evans offers many arguments in its memorandum opposing ATG's motion, none of which change the Court's decision on this point. First, Bob Evans argues that whether Plaintiff slipped on ice or snow is a material fact in dispute. Bob Evans' Mem. Oppos. Summ. J. 7, ECF No. 64. Even assuming Plaintiff did slip on snow,[1] this revelation would have no effect on the Court's decision as to Plaintiff's alternative cause of action. This cause of action alleges a failure

---

[1] Bob Evans has not provided the Court with any affirmative evidence to present a dispute of material fact that Plaintiff slipped on snow. Bob Evans argues that the "snow and ice in and around Plaintiff's vehicle and the handicapped parking location may have been a factor in causing this accident." Bob Evans' Mem. Oppos. Summ. J. 8, ECF No. 64. This assertion ignores the undisputed fact that Plaintiff's fall occurred on her way back to her car from the restaurant, while she was still on the sidewalk. R. Burton's Depo. 31–33, ECF No. 63-2. Thus, the snow in and around Plaintiff's vehicle could not have been a factor in causing this accident.

7

to apply salt, a duty which ATG has established it did not have. Therefore, whether Plaintiff slipped on snow or ice is irrelevant as to Plaintiff's alternative cause of action and this argument fails. Second, Bob Evans argues that whether ATG performed its snow removal services prior to Plaintiff's fall is a material fact in dispute. *Id.* at 9. In support, Bob Evans asserts that it received no communications from ATG regarding the date of Plaintiff's fall, communications which are required under the Services Agreement between Bob Evans and Merit. *Id.* at 9–11. However, the agreement between Merit and ATG expressly prohibits such communication directly with Bob Evans. Master Service Agreement 4, ECF No. 35-1. Thus, Bob Evans' argument here is unavailing as well. Third, Bob Evans argues that whether ATG breached its duty is a question of fact that must be resolved by the jury. Bob Evans' Mem. Oppos. Summ. J. 12, ECF No. 64. This Court finds that ATG owed no duty to apply salt to the sidewalks. It cannot have breached a duty it did not owe. Therefore, this argument also fails as to Plaintiff's alternative cause of action.

     As to Plaintiff's first cause of action, however, ATG has not met its burden of showing that there is no genuine dispute as to a material fact and that it is entitled to judgment as a matter of law. In its memorandum opposing summary judgment, Bob Evans asserts that ATG may have failed to adhere to the requirements of the Services Agreement by failing to "place the removed snow in an area that prevented it from melting and draining back onto the sidewalk." Bob Evans' Mem. Oppos. Summ. J. 11, ECF No. 64. The Services Agreement between Bob Evans and Merit provides that "[s]now shall be placed in areas, such as lawns, that will prevent melt water from draining back onto cleared surfaces." Services Agreement 11, ECF No. 64-4. However, Plaintiff's husband testified in his deposition that on their walk back to the car, "there was a little bit of snow . . . up on the sidewalk. It looked like it had fell over on the sidewalk." H. Burton's Depo. 7, ECF No. 63-3. In addition, both Plaintiff and her husband remarked about how the

8

sidewalk looked different ("glistening" or "sheen-y") when they exited the restaurant from when they entered. *Id.*; R. Burton's Depo. 32, ECF No. 63-2. Drawing all inferences in the nonmoving party's favor, it seems possible that ATG may have placed the snow from the sidewalk in such a way that it fell over, melted back onto the surface of the sidewalk, and iced over while Plaintiff and her husband were eating breakfast. These facts support Bob Evans' assertion that ATG may have negligently performed its contractual duties. Therefore, ATG is not entitled to summary judgment on Count I as to Plaintiff's first cause of action.

B. Count II – Common Law Indemnification

Next, ATG argues that neither of the circumstances in which common law indemnity would apply is appropriate in this case. ATG's Mot. Summ. J. 10–12, ECF No. 63. The Kentucky Supreme Court identified the two exceptions in which indemnity, rather than apportionment, would be appropriate:

> The cases in which recovery over is permitted in favor of one who has been compelled to respond to the party injured are exceptions to the general rule, and are based upon principles of equity. Such exceptions obtain in two classes of cases: (1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.

*Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000) (citations omitted).

As to the first exception, ATG argues that "Merit is not guilty in this case of any fault, technically or constructively – Merit itself was forbidden from applying rock salt by Bob Evans under its service agreement." ATG's Mot. Summ. J. 11, ECF No. 63. Thus, because neither Merit nor ATG was responsible for applying salt to the sidewalks, ATG asserts that this exception does not apply. *Id.* As to the second exception, ATG argues that "Merit and ATG are

9

*in pari delicto* because both engaged in the snow removal services," but that the primary negligent party was Bob Evans because Bob Evans retained the duty to apply salt. *Id.* Thus ATG asserts that the second exception does not apply because it was not the primary negligent party. *Id.*

Once again, as to Plaintiff's alternative cause of action, ATG cannot be found to have breached a duty to apply salt when it was expressly prohibited in the contract from applying salt and Bob Evans' policy was to apply salt itself. The first exception allowing for common law indemnity does not apply because Merit committed no technical or constructive wrongdoing when ATG did not apply any salt to the sidewalks. ATG was expressly prohibited from applying salt. The second exception also does not apply because neither Merit nor ATG had a duty to apply salt. They were both prohibited from doing so by contract. Thus, ATG is entitled to summary judgment on Count II as to Plaintiff's alternative cause of action.

As to Plaintiff's first cause of action, the Court finds that summary judgment on Count II is not appropriate. Once again, drawing all inferences in the nonmoving party's favor, it seems possible that ATG may have negligently placed the snow from the sidewalk in such a way that it fell over, melted back onto the surface of the sidewalk, and iced over while Plaintiff and her husband were eating breakfast. These facts support Bob Evans' assertion that ATG may have negligently performed its contractual duties, warranting common law indemnity, particularly under the first exception allowing for such indemnity. Because Merit subcontracted its snow removal duties to ATG, Merit could be held liable technically, although not guilty of any fault. Therefore, ATG is not entitled to summary judgment on Count II as to Plaintiff's first cause of action.

C. Count III – Apportionment

Finally, ATG argues that Merit's claim for apportionment is moot because "[u]nder the apportionment statute, Bob Evans and Merit will never have to pay more than its own share of responsibility as determined by the jury," so "by operation of the law, such a claim does not exist." ATG's Mot. Summ. J. 12, ECF No. 63. Under current Kentucky law, "liability among joint tortfeasors in negligence cases is no longer joint and several, but is several only." *Degener*, 27 S.W.3d at 779. Kentucky's apportionment statute provides:

> In all tort actions . . . involving fault of more than one (1) party to the action, including third-party defendants and persons who have been released . . . , the court . . . shall instruct the jury to answer interrogatories or, if there is no jury, shall make findings indicating:
> . . .
> (b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability.

Ky. Rev. Stat. Ann. § 411.182. "Contemporary apportionment requirements . . . provide that fault in a tort action is automatically subject to apportionment among the parties to the action. This statute renders [claims for apportionment] needless." *Sommerkamp v. Linton*, 114 S.W.3d 811, 817 (Ky. 2003). This Court has pointed out before that "[u]nder Kentucky law, apportionment may no longer be raised as a substantive cause of action." *ISP Chemicals LLC v. Dutchland, Inc.*, 771 F. Supp. 2d 747, 752 (W.D. Ky. 2011) (citations omitted); *see also Texas Capital Bank, N.A. v. First Am. Title Ins. Co.*, No. 3:09-CV-661-H, 2012 WL 443460, at *1 (W.D. Ky. Feb. 10, 2012); *Burton v. HO Sports Co.*, No. 4:06-CV-100-JHM, 2009 WL 1390832, at *2 (W.D. Ky. May 14, 2009). Accordingly, the Court finds that Merit does not have a claim against ATG for apportionment as a matter of law and summary judgment as to Count III will be granted.

However, "[i]f there is an active assertion of a claim against joint tortfeasors, and the evidence is sufficient to submit the issue of liability to each, an apportionment instruction is required." *Burton*, 2009 WL 1390832, at *2 (quoting *Floyd v. Carlisle Construction Co.*, 758 S.W.2d 430, 432 (Ky. 1988). The Court finds that Merit has actively asserted claims against ATG so as to preserve its right to a jury instruction on apportionment under Kentucky Revised Statutes § 411.182 if the evidence supports such an instruction at trial.

V.  Conclusion

The Court will grant summary judgment in part and deny summary judgment in part to ATG on Counts I and II. In particular, the Court will deny ATG's motion for summary judgment on Counts I and II as to Plaintiff's first cause of action. The Court will grant summary judgment on Counts I and II as to Plaintiff's alternative cause of action. Finally, the Court will grant summary judgment to ATG on Count III.

The Court will enter an order in accordance with this opinion.

November 4, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**